**Affirmed in part, Reversed in part, Rendered in part, and Remanded and Opinion Filed November 7, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-01259-CV

**YVETTE BRANCH, Appellant**
**V.**
**MATTHEW BERGIN AND KATHERINE BERGIN, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-07239**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Miskel

This case arises from an approximately seven-year dispute over the sale of real property. Yvette Branch appeals the trial court's final judgment in favor of Matthew Bergin and Katherine Bergin on their claim for breach of a Mediated Settlement Agreement (MSA) and order of a take-nothing judgment on Branch's competing breach-of-MSA counterclaim relating to the sale of real property.

Branch raises the following four issues on appeal, which she argues in the alternative: (1) the trial court erred when it rendered judgment against Branch on the Bergins' breach-of-MSA claim because the MSA terminated by its own terms; (2) if

this Court upholds the finding that Branch breached the MSA, then the trial court erred when it decided against Branch on her affirmative defense of failure of consideration; (3) if this Court also upholds the rejection of Branch's affirmative defense, then the trial court erred when it granted the Bergins' request for specific performance; and (4) if this Court concludes that the trial court erred when it failed to award Branch a take-nothing judgment on the Bergins' breach-of-contract claims, then the trial court also erred when it failed to award Branch attorney's fees.

We conclude the evidence is legally insufficient to support the trial court's judgment in favor of the Bergins on their breach-of-MSA claim on which the specific performance decree is based. We reverse the final judgment in part as to the Bergins' breach-of-MSA claim and the award of specific performance and render judgment that the Bergins take nothing as to their breach-of-MSA claim. We also reverse the portion of the trial court's final judgment as to the award of attorney's fees. In all other respects, we affirm the trial court's final judgment. We remand the case to the trial court to render a new judgment in favor of the Bergins for $14,339.29 plus pre- and post-judgment interest and to determine an appropriate award of attorney's fees—trial and appellate—based on the part of the judgment that we affirm.

## I. Factual and Procedural Background

The evidence introduced at trial supported the following facts. Branch placed her house for sale because she had accepted a new position and was relocating to

Georgia. The Bergins made an offer on the house, and the parties eventually agreed to a purchase price of $248,000.

In May 12, 2017, the parties signed a residential sale contract (initial contract) for the sale of the property and Branch moved out of the house. The initial contract provided in part:

> **7. PROPERTY CONDITION:**
>
> > A. PROPERTY CONDITION: . . . . Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
>
> . . . .
>
> > D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
>
> . . . .
>
> > (1) Buyer accepts the Property As Is.
>
> . . . .
>
> > E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5%

–3–

> of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

The initial contract also provided that "a Buyer [or] Seller . . . who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding." The parties also signed a third-party-financing addendum to the initial contract that provided in part that time was of the essence. The closing was scheduled for June 29, 2017, but the parties later executed an amendment to the initial contract changing the closing date to June 15, 2017.

In May 2017, the house was inspected and no bacterial growth or water damage was found. However, prior to the scheduled closing, Branch's current boss shared some concerns about the viability of the Georgia company she was going to work for. As a result, on May 25, 2017, Branch decided not to relocate or sell her property.

On June 15, 2017, the closing did not occur. But on that same date, the Bergins had the utilities for the property put in their name. When the closing did not occur, Katherine Bergin requested that the utilities be transferred back to Branch that same day but nevertheless received and paid some of the utility bills for the property through approximately September 2017. She contended that the water company stated the Bergins' name would remain on the account until someone else put it in their name and that Branch did not take that required action.

On June 16, 2017, the Bergins sued Branch alleging claims for breach of the initial contract, fraud involving a real-estate contract, common-law fraud and

misrepresentation, and they sought a temporary injunction, specific performance, damages, exemplary damages, and attorney's fees. Branch answered the lawsuit generally denying the allegations and asserted a counterclaim for attorney's fees under the initial contract.

During the pendency of the suit and before the scheduled hearing on the Bergins' request for a temporary injunction, the parties executed a Rule 11 Agreement on September 11, 2017. The parties' agreement is summarized as follows:

- The title company will retain the earnest money in escrow without liability.

- Branch will refrain from doing the following until the trial court signs a subsequent order: (1) moving back into, leasing, assigning, transferring, encumbering, renting, altering, allowing third parties to occupy the property; (2) failing to keep the utilities turned on; (3) failing to keep the mortgage and insurance payments current; (4) failing to maintain the lawn and landscaping; (5) instituting any liens; and (6) continuing to show or list the property for sale.

In accordance with the terms of the initial contract, the parties agreed to mediate their dispute. On December 27, 2017, the parties executed the MSA[1] that settled and released their claims and counterclaims. The following is a summary of the parties' MSA:

---

[1] The MSA was a handwritten settlement agreement titled "Mediated Rule 11 Agreement" that states it was "made and entered into at mediation on December 27, 2017 by and between the party signatories." It was signed by the Bergins and Branch as well as their counsel who signed as to form. Further, in their first amended petition, the Bergins identified this agreement as an MSA and attached it to their pleading.

- The parties agreed to reduce the $248,000 purchase price by $22,500; the purchase price was changed to $225,500.

- The parties agreed that $35,000 of the purchase price would be held in escrow by the title company to compensate for any damages or changes in condition to the property and landscaping that occurred after the first inspection with a $10,000 cap of the escrow funds to be used toward any landscaping issues. They also agreed the title company would prepare the escrow agreement.

- The parties agreed to release one another as to any and all claims except as to the escrow funds.

- The parties incorporated the terms of the initial contract that was the subject of their dispute subject to the modifications contained in the MSA.

- A new closing date was set for January 29, 2018.

- Branch agreed to immediately turn on the property's utilities at her expense.

- Branch agreed to deliver a key to the Bergins' counsel to facilitate entry onto the property by the Bergins' inspectors and appraisers.

- The parties agreed that each would bear their own fees and expenses.

- In an exhibit incorporated by and attached to the MSA, the parties also agreed to the following: (1) contractors will provide estimates for the costs of fixing any damages to the house and landscaping pointed out by inspectors and will be told in advance they will not be given the work; (2) all of the estimator's expenses for inspections and reports will be reimbursable from the escrow funds; (3) the Bergins will use their best efforts to submit all estimates to Branch and the title company 120 days before closing; (4) all unresolved disputes over the escrow sum will be first submitted to mediation; (5) instructions for the release of funds must be in writing and agreed to by both parties' attorneys; and (6) any costs relating to

the title company's creating an escrow agreement will be borne equally by both parties.

The parties did not file the MSA with the trial court and obtain an order or judgment disposing of the case. Instead, they agreed that, after closing, they would file an agreed order of dismissal with prejudice. On December 29, 2017, two days after the MSA was executed, Branch advised her attorney that all utilities should have been turned on. However, only the electricity and water were on at that point; the gas was turned on around January 8, 2018.

Before the new January 29, 2018, closing date, the Bergins' inspectors discovered mold damage to the house. As a result, the Bergins' mortgage lender refused to fund the loan before the mold damage was repaired. Neither Branch nor the Bergins were willing to pay for the lender-required repairs before closing. As a result, the Bergins were unable to secure financing for the purchase of the property and the January 29, 2018, closing did not occur.

On January 30, 2018, the Bergins filed their first amended petition that acknowledged the parties had executed the MSA and asserted claims for breach of contract, fraud involving a real-estate contract, and common-law fraud and misrepresentation. With respect to their breach-of-contract claims, the Bergins alleged that Branch had: (1) breached the initial contract by failing to keep the utilities turned on and close on the sale; (2) breached the September 11, 2017, Rule 11 agreement by failing to keep the utilities turned on; and (3) breached the MSA by failing to comply with the prior Rule 11 agreement, which created the

conditions that allowed for the mold growth and by refusing to perform the mold remediation before the January 29, 2018, closing date. The Bergins also requested a temporary injunction preventing Branch from reoccupying the property and sought specific performance, monetary damages, statutory damages under Chapter 27 of the Texas Business and Commerce Code, exemplary damages under § 41.003(a) of the Texas Civil Practice and Remedies Code and Chapter 27 of the Texas Business and Commerce Code to punish Branch for "unconscionable overreaching," and attorney's fees.

In her fourth amended answer, which she filed pro se, Branch generally denied the allegations and asserted the following affirmative defenses among others: failure of consideration, "unclean hands," no reasonable reliance, modification of the initial contract, waiver of the right to pursue claims based on the initial contract, and failure to mitigate damages. Also, in her fourth amended counterclaims, Branch alleged counterclaims for trespass to real property, negligence, and breach of the MSA. She sought monetary damages and attorney's fees.

In May 2018, Branch paid for the mold remediation to the house. Also, she reoccupied the property in December 2018 or January 2019. Later, on September 19, 2019, the trial court granted a partial summary judgment that the Bergins take nothing on their claims for common-law fraud, fraud in a real-estate transaction, and fraudulent misrepresentation.

In March 2021, the case was tried before the court and Branch appeared pro se. After the conclusion of the trial, Branch was again represented by counsel. On September 28, 2021, the trial judge signed an interim judgment that found the Bergins were the equitable owners in title to the real property and that Branch was not lawfully occupying the property. The trial court ordered, among other things:

- the closing to occur within seventy-five days of the interim judgment with a purchase price of $225,000;

- the partition of the sale proceeds and distribution of those proceeds among the persons entitled to recover expenses and commissions;

- that the Bergins may follow the common law steps of eviction to take possession of the property prior to closing;

- that the costs of any eviction proceeding are recoverable expenses of the sale;

- that Branch shall not allow the property to be placed in foreclosure, shall not transfer, encumber, assign, or burden the property with additional liens, shall maintain an insurance policy on the property, shall not alter the property other than maintain the lawn and landscaping;

- that the Bergins recover from Branch actual damages upon adequate submission and proof, attorney's fees, court costs, and post-judgment interest; and

- that Branch take nothing on her counterclaims.

On October 28, 2021, Branch filed a motion for new trial arguing in part that the trial court's interim judgment erroneously conveyed title to the house to the Bergins and allowed them to evict her from the property before the closing had occurred and that the undisputed evidence showed that both parties refused to

perform the lender-required repairs so the MSA terminated by its own terms and was no longer enforceable. The Bergins responded and, after a hearing, the trial judge signed an order on January 11, 2022, vacating the interim judgment.

In the meantime, on October 14, 2021, Branch requested findings of fact and conclusions of law relating to the interim judgment. On November 9, 2021, the Bergins filed proposed findings of fact and conclusions of law.[2] And on November 20, 2021, Branch filed a notice of past due findings of fact and conclusions of law. The record does not contain any written findings of fact or conclusions of law relating to the interim judgment.

On September 30, 2022, the trial judge signed a final judgment that impliedly granted Branch's motion for new trial in part and vacated the interim judgment which is summarized as follows:

- The Bergins are the true owners in title to the real property,

- If the Bergins' right to title remains in place after any appeal, within twenty-five days of all appeals being exhausted the parties will close on the property.

- The purchase price at closing will be $225,000.

---

[2] The Bergins requested a finding of fact that "[a]dditional damages may be present within the Property which have occurred since January 2018 which will only be discovered upon [the] Bergins['] unfettered access to the Property" and conclusions of law that "[the] Bergins are entitled to a separate hearing as to any additional damages to the Property and other offsets to the purchase price which should be allowed" and "[t]o accurately know the amount of damages, [] Branch must vacate the Property and the Bergins must be able to have unfettered access to the Property."

- The Bergins are entitled to $14,330.29 in economic damages, which will be deducted from the purchase price of the property.[3]

- The Bergins are awarded attorney's fees in the amount of $49,127.75, which will be deducted from the purchase price of the property.

- After the economic damages and attorney's fees are deducted, the purchase price of the house will be $161,541.96.

- The Bergins may follow the common steps of eviction to take possession of the property after closing.

- Branch was ordered to not cause or allow others to damage or harm the property.

- Branch was ordered that she will not allow the property to be placed in foreclosure.

- Branch was ordered that she may not transfer, encumber, assign, or burden the property with additional liens.

- Branch was ordered to maintain an insurance policy on the property.

- Branch was ordered not to alter the property other than to maintain the lawn and landscaping during any period of occupancy or until she has surrendered possession.

- The Bergins were entitled to recover their taxable court costs, and post-judgment interest from Branch.

- It was ordered that Branch take nothing on her counterclaims.

Branch timely requested findings of facts and conclusions of law, and she timely filed a notice of past-due findings and conclusions. But the trial court did not

---

[3] We note that the parties do not explain the legal or evidentiary basis for this finding, nor does Branch challenge it on appeal.

issue findings and conclusions, and Branch does not complain about that failure on appeal.

## II.    Judgment on the Bergins' Breach-of-MSA Claim

In issue one, Branch argues the trial court erred when it rendered judgment against her on the Bergins' breach-of-MSA claim because there was no evidence she was required to remediate the mold before closing.  She contends that the express terms of the MSA, which was the live contract, provided that if the buyers' lender required repairs to the property before it would fund the loan and neither party agreed to pay for those repairs, the contract terminated.  She also argues that it is undisputed that neither she nor the Bergins agreed to perform the repairs required by the Bergins' lender.  As a result, she claims that the MSA terminated by its own terms. We construe Branch's argument to assert the trial court impliedly found her affirmative defense of modification in her favor and erred when it impliedly found she breached the MSA and awarded the Bergins specific performance because the evidence is legally insufficient to support that implied finding.

The Bergins respond that Branch's multiple breaches of the initial contract, the September 11, 2017, Rule 11 agreement, and the MSA support the trial court's judgment.  They also argue that Branch's breaches are not excused by the Bergins' funding issues because Branch created those issues.  As a result, they contend that they were entitled to specific performance because Branch's actions prevented the parties from closing.

## A.    Standard of Review

In an appeal from a bench trial, the trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's findings. *Bradford Place Apartments v. Rawlings*, No. 05-22-01298-CV, 2024 WL 3897464, at *3 (Tex. App.—Dallas Aug. 22, 2024, no pet.) (mem. op.).  When there are no findings of fact despite a timely request, an appellate court presumes that the trial court made all the findings necessary to support its judgment. *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017).  When the appellate record includes the reporter's record, these implied findings of fact may be challenged for legal and factual sufficiency. *Bradford Place*, 2024 WL 3897464, at *3.  Unchallenged findings of fact are binding on the parties and the reviewing court. *Id.*

When an appellant challenges the legal sufficiency of an adverse finding on which she did not have the burden of proof at trial, she must demonstrate there is no evidence to support the adverse finding. *Bradford Place*, 2024 WL 3897464, at *3. When reviewing the record, an appellate court determines whether any evidence supports the challenged finding. *Id.*  If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Bradford Place*, 2024 WL 3897464, at *3; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (more than a scintilla of evidence exists when evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions

–13–

(internal quotation omitted)).  An appellate court views the evidence in a light favorable to the judgment, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

The trial court's conclusions of law are reviewed de novo.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  An appellate court is not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.).

## B. The Trial Court Impliedly Found that the MSA Was a Modification of the Initial Contract

First, we address Branch's arguments that the trial court (1) impliedly found the MSA was a contract that replaced the initial contract and was the live contract at the time of the parties' trial and (2) impliedly concluded that the MSA was a modification of the initial contract.

The record shows that the parties executed an MSA during mediation of the parties' claims based on the initial contract.  Mediation is a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them.  TEX. CIV. PRAC. & REM . CODE ANN. § 154.023(a).  If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same

–14–

manner as any written contract. *Id.* § 154.071(a). The parties' MSA expressly reaffirms the initial real estate contract except as modified by the MSA.

The trial court's judgment states the purchase price of the property at closing will be $225,000, which is the reduced purchase price stated in the MSA. In the initial contract, the purchase price was $248,000. Accordingly, we agree with Branch that there is record support that the trial court (1) impliedly found that the MSA was a contract that incorporated and modified the initial contract and was the live contract at the time of the parties' trial and (2) impliedly concluded the MSA was a modification of the initial contract.

## C. Breach-of-MSA Claim and Award of Specific Performance

Second, we address Branch's argument challenging the legal sufficiency of the evidence to support the trial court's implied findings that Branch breached the covenant in the MSA agreeing to sell the house and the elements of specific performance were met. She claims there is no evidence of one or more elements of the Bergins' breach-of-MSA claim because the MSA terminated by its own terms when both parties refused to pay for the lender-required mold remediation—which occurred before Branch's duty to convey the house ripened.

### 1. Applicable Law

A plaintiff asserting a breach-of-contract claim must prove: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or

–15–

tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008); *Stafford v. S. Vanity Mag., Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). Specific performance is not a separate cause of action, but rather an equitable remedy used as a substitute for monetary damages when such damages would not be adequate. *Stafford*, 231 S.W.3d at 535. A contract will not be specifically enforced if there is an adequate remedy at law. *Id.* However, specific performance may be awarded when the property has a "special, peculiar, or unique value or character." *See id.*

## 2. The Evidence Conclusively Established that the MSA Terminated By Its Own Terms

In their first amended petition, the Bergins alleged that Branch breached the MSA by failing to comply with the prior September 11, 2017, Rule 11 agreement, which created the conditions that allowed for the mold growth, and by refusing to perform the mold remediation before the January 29, 2024, closing date. The parties do not dispute, and the evidence shows, that the parties incorporated into the MSA the terms of the initial contract that was the source of their dispute, subject to the modifications contained in the MSA. The initial contract provided that if the parties did not agree to pay for the lender-required repairs the MSA would terminate. This

provision was incorporated into the MSA. Further, the evidence establishes and the parties do not dispute that neither Branch nor the Bergins were willing to pay for the lender-required mold remediation prior to closing.

The Bergins contend that the MSA's escrow provision obligated Branch to pay for any lender-required repairs in advance of the closing date. We disagree. In the MSA, the parties agreed that $35,000 of the purchase price would be held in escrow by the title company to compensate for any damages to the property that occurred after the first inspection. However, nothing in the MSA suggests that Branch was obligated to place those funds in escrow prior to closing or that the escrow funds would come from a source other than the proceeds of the sale. Further, Katherine Bergin testified at trial that she had anticipated paying for the repair of the foundation, the stove, and the mold from the escrow account after the closing. That testimony is inconsistent with the premise that the escrow provision obligated Branch to pay for lender-required repairs before closing. Finally, the Bergins' interpretation of the escrow provision is unreasonable in the face of the express provision that the contract would terminate if the parties did not agree to pay for lender-required repairs.

The Bergins also argue that Branch paid for the mold remediation after the closing failed to occur and subsequently moved back onto the property. However, Branch's subsequent actions did not alter the terms of the MSA, which did not

require her to pay for lender-required repairs.  Nor did they place a retroactive obligation on her to have done so.

Accordingly, we conclude the evidence conclusively shows that the MSA terminated by its own terms before Branch's obligation to convey the house ripened and, as a result, there is no evidence to support the implied finding that Branch breached the MSA by failing to convey the house to the Bergins.  Accordingly, the trial court erred by granting specific performance and by ordering Branch to convey the house to the Bergins.

We note that the trial court also awarded the Bergins $14,339.29 as economic damages to be offset against the purchase price.  That award implies findings that Branch breached a contract[4] and that her breach caused the Bergins an injury reasonably valued at $14,339.29.  Branch does not challenge these implied findings, so they are binding on the parties and this Court.  *See Bradford Place*, 2024 WL 3897464, at *3.

Issue one is decided in favor of Branch.  Based on our resolution of issue one, we need not address Branch's remaining issues that were raised in the alternative.  And because we are not rendering a take-nothing judgment against the Bergins, we reject Branch's fourth issue, which is premised on our rendering such a judgment.

---

[4] The Bergins pleaded breaches of three agreements.

–18–

## D.    Attorney's Fees

The Bergins were awarded attorney's fees in conjunction with their breach-of-MSA claim. As discussed above, we have reversed the trial court's grant of that claim but affirmed the trial court's unchallenged grant of economic damages in favor of the Bergins. Based on our disposition of Branch's first issue, we reverse the trial court's award of attorney's fees and remand the case for the trial court to determine the amount of the Bergins' attorney's fees due on the affirmed claim. *See Cox Paving of Tex. Inc. v. H.O. Salinas & Sons Paving, Inc.*, 657 S.W.3d 756, 771–72 (Tex. App.—El Paso 2022, pet. denied).

## III.    Conclusion

We conclude the evidence conclusively shows that the MSA terminated by its own terms and, as a result, there is no evidence of one or more elements of the Bergins' breach-of-MSA claim on which the specific-performance decree is based.

We reverse the final judgment as to the Bergins' breach-of-MSA claim and the award of specific performance, and we render judgment that the Bergins take nothing on their breach-of-MSA claim.

We also reverse the final judgment as to the award of attorney's fees.

In all other respects the trial court's final judgment is affirmed.

The case is remanded for the trial court to render a new judgment in favor of the Bergins for $14,339.29 plus pre- and post-judgment interest and to determine an

appropriate award of attorney's fees—trial and appellate—based on the part of the judgment that we affirm.


221259f.p05

/Emily Miskel/
EMILY A. MISKEL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

YVETTE C. BRANCH, Appellant

No. 05-22-01259-CV          V.

MATTHEW BERGIN AND
KATHERINE BERGIN, Appellees

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-07239.
Opinion delivered by Justice Miskel.
Justices Goldstein and Garcia
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** in part, **RENDERED** in part, and **AFFIRMED** in part.

We **REVERSE** the final judgment as to appellees MATTHEW BERGIN and KATHERINE BERGIN's breach-of-MSA claim and the award of specific performance, and we **RENDER** judgment that appellees MATTHEW BERGIN and KATHERINE BERGIN take nothing on their breach-of-MSA claim.

We also **REVERSE** the final judgment as to the award of attorney's fees.

In all other respects the trial court's final judgment is **AFFIRMED**.

The case is **REMANDED** for the trial court to render a new judgment in favor of the appellees MATTHEW BERGIN and KATHERINE BERGIN for $14,339.29 plus pre- and post-judgment interest and to determine an appropriate award of attorney's fees—trial and appellate—based on the part of the judgment that we affirm.

It is **ORDERED** that each party bear its own costs of this appeal.


Judgment entered this 7th day of November, 2024.